UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

———————————————————————————
                                    )
MSO OF PUERTO RICO, LLC,             )
                                    )
                Plaintiff,           )
                                    )
        v.                           )        CIVIL ACTION
                                    )        NO. 3:18-01683-WGY
MED SCAN, PSC,                       )
MEDISCAN, PSC,                       )
MEDSCAN MRI & CT SCAN, LLC and       )
WILLIAM CRUZ MEDINA,                 )
                                    )
                Defendants.          )
———————————————————————————)

YOUNG, D.J.[1]                                    July 2, 2019

                      **MEMORANDUM & ORDER**

**I.    INTRODUCTION**

     This motion to remand turns on whether federal jurisdiction

extends to a dispute that may require interpretation of federal

regulations but which involves no federal actor, only a Medicare

administrator.  For the reasons stated below, the Court ALLOWS

the motion to remand and REMANDS the case to the Commonwealth of

Puerto Rico Court of First Instance, Superior Court of San Juan.

---

[1] Of the District of Massachusetts, sitting by designation.

## II. BACKGROUND

### A. Factual Background

The plaintiff, MSO of Puerto Rico, LLC ("MSO Puerto Rico"), provides clinical management and administrative services to two health insurance companies, MMM Healthcare, Inc. ("MMM Healthcare") and PMC Medicare Choice, LLC ("PMC Medicare"), in Puerto Rico and administers service provider contracts under Medicare.[2] See Compl. ¶ 4, ECF No. 11-1; Mot. Remand 1, ECF No. 8. On October 7, 2013, Med Scan PSC ("Med Scan"), through Dr. William Cruz Medina ("Dr. Cruz"), a radiologist who is a

_____

[2] As the First Circuit describes in First Medical Health Plan, Inc. v. Vega-Ramos: "Medicare is a federally run health insurance program benefitting primarily those who are 65 years of age and older. . . . In 1997, Congress enacted Medicare Part C to allow Medicare beneficiaries to opt out of traditional fee-for-service coverage under Parts A and B." 479 F.3d 46, 48 (1st Cir. 2007) (citing 42 U.S.C. §§ 1395c et seq. (Part A), 1395j et seq. (Part B), 1395w-21 et seq. (Part C)). Although the parties do not explicitly state, the claims in this case appear to arise under a Part C, or Medicare Advantage, contractual relationship between an administrator and a service provider. Compl. ¶ 10; Mot. Remand 7 ("[E]nrollees have already received the benefits from Defendants and they are not in danger of being charged for the services received. The government is also not at a financial risk of covering the claims."); see also Mot. Secure J. ¶ 14, ECF No. 11-2 ("Both MED SCAN PSC and Dr. Cruz provided services to Medicare beneficiaries for MMM and PMC plans . . ."); Mot. Providing Sworn Statement ¶¶ 6-10, ECF No. 11-3 (describing Medicare Advantage services by Med Scan and Dr. Cruz); Compl. Ex. 5, Letter from MMM Holdings, Inc. to Med Scan 1, ECF No. 1-1 (referencing inability to make "MA organization" payments to provider post-revocation of Medicare privileges).

principal shareholder, director, and officer of Med Scan,[3] executed a Provider Service Agreement ("Agreement") and Medicare Advantage Addendum Agreement ("MA Addendum") with MSO Puerto Rico. Compl. ¶ 10. The Agreement, among other things, obligated Med Scan to notify MSO Puerto Rico within one business day of the loss of its Medicare participation privileges and authorized MSO Puerto Rico to terminate the Agreement if Med Scan failed to comply with that obligation. Id. ¶¶ 10-13. The MA Addendum required that Med Scan maintain full participation status in Medicare and immediately notify MSO Puerto Rico if Medicare ever excluded Med Scan from participating. Id. ¶ 14. The MA Addendum also required Med Scan to comply with all state and federal Medicare regulations. Id.

In April 2018, MSO Puerto Rico learned from the Office of the Inspector General that the Center for Medicare and Medicaid Services ("the Center") revoked Med Scan's Medicare privileges on October 5, 2016, effective November 4, 2016. Id. ¶¶ 15-16. The Center barred Med Scan from Medicare because Med Scan submitted claims for services that it performed on 12 beneficiaries, but those beneficiaries passed away prior to the

---

[3] Cruz is allegedly a member, principal shareholder, director, and officer of Med Scan, Mediscan, PSC ("Mediscan"), and Medscan MRI & CT Scan, LLC ("Medscan MRI"). Compl. ¶ 9. Cruz allegedly transferred assets from Med Scan to Medi Scan and Med Scan MRI. Id. ¶¶ 58-59.

date of the procedure listed on the claims. Id. ¶ 16 & Compl. Ex. 2, Letter from the Center to Med Scan 1, ECF No. 1-1. Moreover, Med Scan failed to produce those beneficiaries' records to the Center upon request. See id. On April 13, 2017, the Center revoked Dr. Cruz's privileges, effective May 13, 2017, for billing for services for seven beneficiaries after those beneficiaries' deaths. Id. ¶¶ 18-19. Neither Med Scan nor Dr. Cruz notified MSO Puerto Rico of the Center's revocation of their Medicare privileges. Id. ¶ 23. On April 30, 2018, MSO Puerto Rico terminated the Agreement and the MA Addendum and notified Med Scan. Id. ¶ 26. MSO Puerto Rico demands the return of $620,401.40 in payments, plus interest, that it made to Med Scan after the Center revoked Med Scan and Dr. Cruz's privileges. Id. ¶ 37.

## B. Procedural History

On August 21, 2018, MSO Puerto Rico filed this action in the Commonwealth of Puerto Rico Court of First Instance, Superior Court of San Juan against Med Scan, Mediscan, Medscan MRI and Cruz (collectively, "the Med Scan Defendants"), bringing four "causes of action": (1) "[r]ecovery for Contractual Breaches"; (2) "[r]ecovery under the Law, based on Federal Fund Fraud"; (3) "[r]ecovery from Dr. Cruz as shareholder of MED SCAN PSC"; and (4) "[r]ecovery by virtue of a Paulian Action for Fraud of Creditors." Compl. 7-11. On September 16, 2018, the

Med Scan Defendants removed the action to the United States District Court for the District of Puerto Rico. Notice Removal, ECF No. 1. On October 30, 2018, MSO Puerto Rico moved to remand the action. Mot. Remand 1. On November 29, 2018, the Med Scan Defendants filed their opposition to the motion. Opp'n Mot. Remand, ECF No. 19.

The Court heard oral argument on the motion to remand on February 14, 2019. At the hearing, the Court ruled the Medicare regulations cited in the complaint do not create a private right of action but afforded the Med Scan Defendants an opportunity to provide authority for retaining jurisdiction in this Court. On March 1, 2019, the Med Scan Defendants filed a supplemental brief. Br. Supp. Exercising Federal Jurisdiction ("Suppl. Opp'n"), ECF No. 29. On March 13, 2019, MSO Puerto Rico filed a supplemental brief in response. Resp. Defs.' Suppl. Br. & Further Supp. Remand Mot. ("Suppl. Mem."), ECF No. 32.

## III. ANALYSIS

MSO Puerto Rico argues that this Court ought remand this action because: (1) the Medicare Act does not create a private right of action and (2) the action does not fall into the narrow exception permitting jurisdiction in cases presenting a substantial federal question. Mot. Remand 3, 5. The Med Scan Defendants oppose the motion on the grounds that the face of the complaint states a federal question where MSO Puerto Rico

alleges entitlement to relief based upon federal regulations,
Opp'n Mot. Remand 8-13, and more robustly in supplemental
briefing that there is a substantial federal question that
justifies the exercise of jurisdiction.  Suppl. Opp'n 5-9.

The Court remands the action because, in light of the
removal standard, the Med Scan Defendants have failed to meet
their burden of establishing either a federal question under the
well-pleaded complaint rule on the face of the complaint or a
substantial federal question.

## A.    Removal Jurisdiction Standard

The Med Scan Defendants removed this action under 28 U.S.C.
§ 1441(a).  Notice of Removal ¶ 7.  "Section 1441 is 'strictly
construed' against removal, and any doubt regarding the
propriety of removal should be resolved in favor of remand."
Scotiabank v. Halais-Borges, 339 F. Supp. 3d 25, 26 (D.P.R.
2018) (Besosa, J.) (citing Syngenta Crop Prot., Inc. v. Henson,
537 U.S. 28, 32 (2002); Rosselló-González v. Calderón-Serra, 398
F.3d 1, 11 (1st Cir. 2004)).  The Med Scan Defendants, as "the
part[ies] seeking removal . . . shoulder[] the burden of
demonstrating that removal is appropriate."  See id. (citing
Fayard v. Northeast Vehicle Servs., LLC, 533 F.3d 42, 48 (1st
Cir. 2008)).

## B.    The Court Lacks Federal Question Jurisdiction

The Med Scan Defendants removed this action based upon federal question jurisdiction.  Notice of Removal ¶ 15.  Specifically, this Court has "original jurisdiction over 'federal question' cases —- that is, cases 'arising under the Constitution, laws, or treaties of the United States.'"  BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am., 132 F.3d 824, 831 (1st Cir. 1997) (quoting 28 U.S.C. § 1331).  "A case 'aris[es] under' federal law within the meaning of [section] 1331 . . . if 'a well-pleaded complaint' establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'"  Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 689-90 (2006) (quoting Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 27-28 (1983)).

### 1.    No Federal Question Is Presented under the Well-Pleaded Complaint Rule

The First Circuit has held that "[t]he gates of federal question jurisdiction are customarily patrolled by a steely-eyed sentry —- the 'well-pleaded complaint rule' —- which, in general, prohibits the exercise of federal question jurisdiction if no federal claim appears within the four corners of the complaint."  BIW Deceived, 132 F.3d at 831 (citing City of Chi.

v. _International Coll. of Surgeons_, 522 U.S. 156, 163 (1997);

_Gully_ v. _First Nat'l Bank_, 299 U.S. 109, 113 (1936)).  The

Supreme Court has repeatedly held that "whether a federal

statute creates a claim for relief is not jurisdictional."

_Northwest Airlines, Inc._ v. _County of Kent_, 510 U.S. 355, 365

(1994) (collecting cases); _Arroyo-Torres_ v. _Ponce Fed. Bank,_

_F.B.S._, 918 F.2d 276, 280 (1st Cir. 1990) (holding that federal

jurisdiction exists to determine whether an implied private

right of action created by statute).  To be sure,

"jurisdictional dismissals in actions premised on federal

question jurisdiction are the exception to the rule."  _Arroyo-_

_Torres_, 918 F.2d at 280.

It is also well-settled that "the absence of a valid (as

opposed to arguable) cause of action does not implicate subject-

matter jurisdiction, _i.e.,_ the courts' statutory or

constitutional power to adjudicate the case."  _Steel Co._ v.

_Citizens for a Better Env't_, 523 U.S. 83, 89 (1998).  That is,

"jurisdiction is not defeated by the possibility that the

averments might fail to state a cause of action on which the

petitioners could actually recover," _id._ (citing _Bell_ v. _Hood_,

327 U.S. 678, 682 (1946)), but "[r]ather, the district court has

jurisdiction . . . unless the claim 'clearly appears to be

immaterial and made solely for the purpose of obtaining

jurisdiction or where such a claim is wholly insubstantial and

frivolous,'" id. (quoting Bell, 327 U.S. at 682-83). Thus, "[d]ismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" Id. (quoting Oneida Indian Nation of N.Y. v. County of Oneida, 414 U.S. 661, 666 (1974)).

Here, MSO Puerto Rico does raise a count in the complaint entitled "[r]ecovery under the Law, based on Federal Fund Fraud." Compl. 8. MSO Puerto Rico asserts in the complaint public policy concerns and provider obligations for improper payments under Medicare. Id. ¶¶ 24-29, 44-46. This count more specifically seeks recovery premised under Medicare's administrative remedy regulations of recoupment or offset. Id. ¶¶ 45-49; see 42 C.F.R. § 405.371-73. Nonetheless, reading the complaint as a whole, MSO Puerto Rico has described rights plainly enforceable only as an administrative remedy. Compl. ¶¶ 44-49. MSO Puerto Rico argues that its complaint does not reference a specific federal statute (i.e., this is not a claim for benefits under Medicare under 42 U.S.C. § 405(g)), Mot. Remand 4 (citing Heckler v. Ringer, 466 U.S. 602, 614-15 (1984)), and federal regulations absent statutory authorization cannot give rise to a private right of action, id. at 4-5

[9]

(citing <u>Alexander</u> v. <u>Sandoval</u>, 532 U.S. 275, 291 (2001)). The Med Scan Defendants counter that the complaint invokes a federal claim because it repeatedly references federal regulations and federal statutory mandate. Opp'n Mot. Remand 11-15.

Here, the parties point to no statutory authority authorizing a private right of action under the recoupment regulations referenced in the complaint. As the Supreme Court has held, "it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself." <u>Id.</u> But notwithstanding this impediment, a plain reading of the regulations themselves reveal nothing more than a pure administrative remedy that cannot be read to include any right of action at all. The First Circuit's examination of the recoupment regulations in <u>United States</u> v. <u>Lahey Clinic Hosp.,</u> <u>Inc.</u>, 399 F.3d 1, 17 (1st Cir. 2005), is instructive. In <u>Lahey</u>, the First Circuit held that Medicare regulations concerning recoupment and offset procedures were administrative remedies that do not provide a basis for relief in a suit for damages by the government in federal court:

> Each of these [regulatory] remedies of recoupment,
> offset, and suspension assume an ongoing relationship
> between the Secretary and the provider. In situations
> in which there is no ongoing Medicare relationship
> between the Secretary and the provider, such as where
> the provider has ceased to treat Medicare beneficiaries
> or has gone out of business, neither recoupment nor
> offset would provide the United States with an
> opportunity to recover the overpaid Medicare payments.
> In addition, in situations in which the government seeks
> damages in the form of a complete payment from the
> provider for the Medicare overpayments, the recoupment,
> suspension, and offset procedures do not provide for
> this relief.

399 F.3d at 17.[4] The First Circuit in <u>Lahey</u> thus reasoned that

the Medicare Act's administrative remedies did not displace the

federal government's authority to seek reimbursement in federal

court under common law theories. <u>Id.</u> at 17-18. Since the

Medicare Act does not displace the federal government's common

law actions, following the First Circuit's reasoning, it would

appear that it does not displace a private litigant's either.

<u>See</u> <u>id.</u> at 17; Compl. ¶¶ 45-49. Applied here, the regulation is

a pure administrative remedy that cannot be read to assert a

---

[4] A plain reading of the definitions, described by the First
Circuit as "terms of art," reveals these regulations merely
describe administrative remedies. <u>Lahey</u>, 399 F.3d at 17.
"Recoupment" is "[t]he recovery by Medicare of any outstanding
Medicare debt <u>by reducing present or future Medicare payments</u>
and applying the amount withheld to the indebtedness." <u>Id.</u>
(quoting 42 C.F.R. § 405.370) (alteration in original, emphasis
added). "Offset" is the "[t]he recovery by Medicare of a non-
Medicare debt <u>by reducing present or future Medicare payments</u>
and applying the amount withheld to the indebtedness." <u>Id.</u>
(alteration in original, emphasis added).

private right of action, notwithstanding the absence of any statutory authorization for a private right of action.

The Med Scan Defendants press that even though the claim may be "meritless," there is nonetheless a federal claim raised on the face of the complaint that provides the appropriate nexus for this Court to exercise jurisdiction. Opp'n Mot. Remand 14-15. While the Med Scan Defendants are correct that the Court ought not undertake a merits analysis of the complaint, the Court still must determine, as the First Circuit instructs, whether the complaint states a colorable claim:

> As a matter of common practice, a district court confronted with a question of subject matter jurisdiction reviews a plaintiff's complaint not to judge the merits, but to determine whether the court has the authority to proceed. When conducting this inquiry, the court only asks whether the complaint, on its face, asserts a colorable federal claim.

BIW Deceived, 132 F.3d at 832 (emphasis added). Recently, the First Circuit has expounded on BIW Deceived:

> A court surveying its subject-matter jurisdiction reviews a plaintiff's complaint not to judge the merits, but to determine whether [it] has the authority to proceed. The federal claim need not have merit in order for the court to assume jurisdiction. To the contrary, a court has jurisdiction to decide a case so long as the plaintiff has alleged a colorable federal claim. A claim is "colorable" if it is seemingly valid or genuine as opposed to wholly insubstantial, immaterial, or frivolous.

Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 18 (1st Cir. 2018) (internal citations and quotation omitted)

[12]

(alteration in original, emphasis added). The Supreme Court has equated the phrase "wholly insubstantial and frivolous" with the phrase "not colorable" in the context of federal question jurisdiction. Arbaugh v. Y&H Corp., 546 U.S. 500, 513 n.10 (2006) ("A claim invoking federal-question jurisdiction under 28 U.S.C. § 1331, Bell held, may be dismissed for want of subject-matter jurisdiction if it is not colorable, i.e., if it is immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous." (citations and quotations omitted)).

The district court's reasoning in Coker v. Kindred Healthcare Operating, Inc., Civ. A. No. 1:14-CV-03672-AT, 2015 WL 11439176, (N.D. Ga. Feb. 27, 2015), persuades the Court that MSO Puerto Rico's complaint does not establish that federal law creates the cause of action at issue here. In Coker, the district court dismissed a non-colorable federal claim, premised upon Medicare regulations relating to nursing home standards, and remanded the action to state court. Id. at *7. The plaintiffs erroneously asserted a count for "[r]ecovery under Federal Law for Long Term Care Facility Abuse," and unlike in this case, expressly alleged in the complaint "an independent right to a cause of action under Federal Law." Id. at *1.

The plaintiffs moved to remand, reversing course on their own complaint claiming, similar to MSO Puerto Rico here, that

[13]

the court lacked subject matter jurisdiction because, among other things, no private right of action existed under the cited Medicare regulations. Id. at *2. The defendants opposed the motion remand arguing, similar to the Med Scan Defendants here, that the plaintiffs' "allegations alone control, and that [their] failure to set forth a viable legal claim goes to the merits rather than to whether jurisdiction is properly established." Id. The Coker court eloquently dispensed with this argument:

> Defendants do not dispute that the Medicare Act does not provide Plaintiffs with a private right of action, nor do they assert any other basis under federal law as possible grounds for federal jurisdiction over Plaintiffs' claim in Count IX. Instead, Defendants assert that Plaintiffs, as the masters of their complaint, should be held to their own allegations asserting a federal claim. According to Defendants, Plaintiffs' "well-pleaded" Complaint establishes federal question jurisdiction despite the fact that the claim in Count IX may be frivolous and subject to dismissal.
>
> Defendants' elevation of form over substance misses the point. . . . Parties cannot confer jurisdiction on a federal court by simply alleging in a complaint a claim that has no basis in federal law.
>
> Defendants also mistakenly contend that whether Plaintiffs' alleged federal claim is frivolous has no bearing on the propriety of Defendants' removal.
>
> A federal court may dismiss for lack of subject matter jurisdiction an alleged claim under the Constitution or federal statutes that (1) clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or (2) is wholly insubstantial and frivolous. The test of federal jurisdiction is not whether the cause of action is one on which the claimant can recover. Rather the test is whether the cause of action alleged is so patently without merit as to justify the court's dismissal for want of jurisdiction. A claim

is wholly insubstantial and frivolous, for example, if
a plaintiff cannot plausibly argue that a federal
statute creates his right to relief. Because, as stated
above, the Medicare regulations do not grant Plaintiffs
a federal right of action, Plaintiffs have not properly
plead a federal claim in Count IX and Count IX should be
dismissed unless Plaintiffs' tort claims involve
substantial questions of federal law implicating this
Court's subject matter jurisdiction under Merrell Dow
Pharm. Inc. v. Thompson, 478 U.S. 804 (1986) and Grable
& Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545
U.S. 308 (2005).

Id. at *4-5 (internal citations and quotations omitted).

Coker's reasoning resonates and persuades here: the parties

cannot plausibly argue that the regulations create a right to

relief under federal law.  Id. at *5.  Accordingly, a claim

purportedly premised on the Medicare Act's regulations for

administrative recoupment and offset provisions is a wholly

insubstantial and frivolous claim -- a non-colorable claim -- in

the sense that it is not an arguable cause of action in the

absence of statutory authorization of a private right of action,

a plain reading of the regulations, and First Circuit precedent.

See Lahey, 399 F.3d at 1.  It, therefore, does not pass muster

under the well-pleaded complaint rule.

### 2.   No Substantial Federal Question

MSO Puerto Rico next argues that its claims do not raise a

substantial federal question.  Mot. Remand 5.  MSO argues that

its claims do not arise under Medicare because they are not

"inextricably intertwined" with a claim for Medicare benefits

under Heckler, 466 U.S. at 615, 623, and the need to interpret federal regulations does not necessarily establish a substantial federal question. Mot. Remand 6 (citing Templeton Bd. of Sewer Comm'rs. v. American Tissue Mills of Mass., Inc., 352 F.3d 33, 40 (1st Cir. 2003); Administracion de Seguros de Salud de P.R. v. Triple-S Salud, Inc., 212 F. Supp. 3d 283, 286 (D.P.R. 2015)). MSO also relies on RenCare, Ltd. v. Humana Health Plan of Texas, Inc., 395 F.3d 555, 558 (5th Cir. 2004), and Main & Associates, Inc. v. Blue Cross & Blue Shield of Alabama, 776 F. Supp. 2d 1270, 1280 (M.D. Ala. 2011) for the proposition that contractual disputes between a provider and a managed care organization are, generally, not "inextricably intertwined" with claims for Medicare benefits. Mot. Remand 6-7. In particular, MSO argues that as in RenCare, here neither the beneficiaries nor the government are at financial risk for covering claims. Mot. Remand 7. The Med Scan Defendants initially opposed the motion on this ground claiming that a federal question is presented in the complaint that raised "direct, substantial, and disputed federal questions." Opp'n Mot. Remand 14-15. The Med Scan Defendants also distinguish RenCare by pointing out that the case was brought solely under state law, and that MSO makes public policy and financial risk allegations. Id. at 15.

After the hearing on the motion to remand, the Med Scan Defendants addressed more robustly the substance of MSO's

[16]

argument that in the absence of a federal claim under the well-pleaded complaint rule there is also no substantial question embedded in the state law claims.  Suppl. Opp'n 4. Nevertheless, as set forth below, the Court rules there is no substantial federal question.

The Med Scan Defendants press "[a] narrow exception to [the well-pleaded complaint] rule" lurking "in the 'remarkably tangled corner of the law' that deals with federal questions embedded in state law claims." Mennonite Gen. Hosp., Inc. v. Molina Healthcare of P.R., 319 F. Supp. 3d 587, 592 (D.P.R. 2018) (Gelpí, C.J.) (citing Almond v. Capital Props., Inc., 212 F.3d 20, 22 (1st Cir. 2000)).  In the context of this action, the exception is applicable "only in the rare instance where the contract is governed by state law but a 'federal issue is decisive' to the dispute and 'the federal ingredient . . . is sufficiently substantial to confer the arising under jurisdiction.'" One & Ken Valley Hous. Grp. v. Maine State Hous. Auth., 716 F.3d 218, 224 (1st Cir. 2013) (quoting W. 14th St. Commercial Corp. v. 5 W. 14th Owners Corp., 815 F.2d 188, 196 (2d Cir. 1987)).  This "doctrine applies in a 'special and small category of cases' where a 'state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and

state judicial responsibilities.'" Id. (alteration in original, emphasis added) (quoting Gunn v. Minton, 568 U.S. 251, 258-59 (2013)). The First Circuit has explained that while "the scope of federal ingredient jurisdiction is determined by the totality of the circumstances, not by a single-factor test," and is "necessarily fact-bound," exercise of "federal ingredient jurisdiction should be applied with caution." Id. at 224-25. The Court, therefore, "must engage in a 'contextual inquiry' that asks whether 'the federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" Mennonite Gen. Hosp., Inc., 319 F. Supp. 3d at 592 (quoting Gunn, 568 U.S. at 258). "If all four questions are answered in the affirmative, federal jurisdiction exists . . . ." Id.

Here, the Court need only focus on the substantiality factor. The Supreme Court has explained that "it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will always be true," even presuming that the state claim necessarily raises a federal issue. Gunn, 568 U.S. at 260. Rather, under the Supreme Court's substantiality analysis in Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, "[t]he substantiality inquiry . . . looks instead to the importance of the issue to the

[18]

federal system as a whole." Gunn, 568 U.S. at 260 (citing Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 315 (2005)). Typically, that means the cause of action will turn on a new interpretation of a regulation, or the issue is of broader significance for the federal government. See id. at 260-62; Municipality of Mayaguez v. Corporacion Para el Desarrollo del Oeste, Inc., 726 F.3d 8, 14 (1st Cir. 2013).

The Court starts by "considering whether the issue in this case is so substantial as to 'justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.'" Municipality of Mayaguez, 726 F.3d at 13 (quoting Grable, 545 U.S. at 312). The First Circuit, relying on Gunn and Grable outlined the "substantiality" analysis as follows:

> But what makes an issue important to the federal system as a whole? Recent Supreme Court case law has suggested at least two answers to this question. First, an issue may be substantial where the outcome of the claim could turn on a new interpretation of a federal statute or regulation which will govern a large number of cases. . . .
> Second, a federal issue may also be substantial where the resolution of the issue has broader significance . . . for the Federal Government. That is, because [t]he Government has a direct interest in the availability of a federal forum to vindicate its own administrative action, the Court has repeatedly suggested that a federal issue is more likely to be substantial where a claim between two private parties, though based in state law, directly challenges the propriety of an action taken by a federal department, agency, or service.

Id. at 14 (internal citations and quotations omitted).

MSO Puerto Rico argues that, under Municipality of Mayaguez, the issues in this case are narrow and fact bound inasmuch as "the Court must resolve whether Med Scan breached the Agreement and continued billing services and receiving payments, as alleged in the Complaint." Mot. Remand 8. The Med Scan Defendants throughout their supplemental briefing claim that MSO Puerto Rico will have to demonstrate under the non-colorable "federal" count whether all of the payments were properly made. Suppl. Opp'n 8-10. As an example, the Med Scan Defendants cling to a narrow "illustrative" issue that *some* of the payments made *may* have been made anyway because:

> under the Medicare program current during the relevant timeframe, not all payments to a provider with revoked privileges were made in error as it allowed these payments in cases of emergency and urgently needed services, as these are defined by the Medicare program. Therefore, [MSO Puerto Rico] must prove, as an issue of fact and law, whether the payments for which it seeks reimbursement "by statutory mandate" were made in error.

Suppl. Opp'n 5; id. at 9-10 ("[T]he resolution of the aforementioned [issue] could impact a universe of payments made to providers for emergency and urgently needed services which may have been properly made and not subject to reimbursement actions."); id. at 11 ("Whether and what type of emergency and urgently services paid to a provider with revoked privileges may

be subject to reimbursement is a matter that requires national uniformity.").

The Med Scan Defendants primarily rely on New York City Health & Hosps. Corp. v. WellCare of N.Y., Inc., 769 F. Supp. 2d 250, 259 (S.D.N.Y. 2011), where the Southern District of New York denied a motion to remand an action relating to Medicare benefits. Suppl. Mem. 6-11. In WellCare, a City of New York Hospital ("the Hospital") was a non-contracting provider of services that billed WellCare for services on a standard form. Id. at 253. That form provided a field for a diagnosis related payment amount, which is the amount that the hospital would receive under Medicare. Id. The form also listed posted charges, which were often lower than the diagnosis related amount. Id. WellCare often paid the lower amount. Id. The Hospital sued WellCare for the diagnosis related amount. Id. The WellCare court held that the dispute was substantial because resolution of whether a Medicare Advantage Organization was required to pay the diagnosis related rate to a non-contracting provider "could potentially affect the hundreds of MA Organizations that have contracted with [the Center]." Id. at 257.

Here, as MSO Puerto Rico highlights in its supplemental opposition, the parties in this action, unlike in WellCare, have a contract, a fact that the WellCare court ruled was a material

distinction.  Id. at 257-58 (distinguishing RenCare because "contracts between MA Organizations and Contracted Providers are subject to very few restrictions, and . . . contracting parties can generally negotiate their own terms, [whereas] the parties here had no contractual relationship and reimbursement is governed by a complex federal regulatory scheme").  As MSO Puerto Rico argues, the Med Scan Defendants overlook this critical distinction, and instead focus on MSO Puerto Rico's non-colorable federal claim to support an argument that a substantial federal claim confers jurisdiction.  Suppl. Opp'n 4-5, 8-9 (citing Compl. ¶¶ 44-49).  MSO Puerto Rico counters that Med Scan Defendants' premise ignores the fact that predominant colorable claims require no interpretation of federal law, and even if they did, the mere fact that the Puerto Rican courts might have to interpret federal regulations does not mean the questions of federal law are "substantial."  Suppl. Mem. 3-4.

Finally, the MedScan Defendants rely on Grupo Novel, Inc. v. Oriental Financing Group, Inc., Civ. A. No. 11-1801-JAG (D.P.R.) (García-Gregory, J.).  In that action, the court retained jurisdiction in a case mooting a motion to dismiss and did not issue an opinion concerning the jurisdictional issue. Because the complaint in that action is restricted, the Court does not discuss the facts here, but notes that the issues in

that case are quite distinguishable from the facts presented here on the issue of substantiality.

MSO Puerto Rico has the better of it. The Med Scan Defendants have not met their burden to demonstrate that the federal question is substantial. First, other than the Med Scan Defendants' bare arguments, Suppl. Opp'n 9-10, there is nothing before the Court to suggest that the resolution of this dispute will have a broad impact on any other cases. Second, the resolution of this action does not challenge the propriety of any action taken by the government. Third, neither the government nor any Medicare beneficiaries are parties to this action. Fourth, the Court has nothing before it to suggest that there is any potential direct governmental or beneficiary liability under Medicare. Finally, absent the non-colorable federal claim, this action is a garden-variety state-law breach of contract and tort claim between private parties. Compl. ¶¶ 39-43. Even if, as Med Scan Defendants contend, the Puerto Rican courts might have to decide whether amounts were paid in violation of Medicare regulations prohibiting payment after revocation of Medicare privileges, or that some (notably unquantified) amounts might have been paid in any event outside of the contract, such questions do not implicate a substantial federal issue. See, e.g., Municipality of Mayaguez, 726 F.3d at 14 ("Though the ultimate question in [plaintiff's] contract

claim is whether [defendant] failed to comply with federal regulations, and thereby breached its contract, this dispute is the sort of 'fact-bound and situation-specific' claim whose resolution is unlikely to have any impact on the development of federal law."); Administracion De Seguros De Salud De P.R., 212 F. Supp. 3d at 286-88 (similar). This is the key distinction: the colorable "claims do not provide a sufficient basis for the exercise of federal jurisdiction because although they [might] raise a disputed federal issue, they do not raise a 'substantial issue of federal law' as is required." Main & Assocs., 776 F. Supp. 2d at 1281. Inartful as MSO Puerto Rico's complaint may have been in referencing a non-colorable claim for recovery under Medicare regulations, MSO Puerto Rico's colorable claims derive under the Agreement and MA Addendum, not directly under Medicare or its regulations. Compl. 7-11. Strictly construing the removal statute, and resolving all doubt in favor of remand, this Court rules that action ought be remanded pursuant to 28 U.S.C. § 1447(c) because there is neither a colorable federal question under the well-pleaded complaint rule nor a substantial federal issue.

## IV. CONCLUSION

For the aforementioned reasons, the motion to remand this action, ECF No. 8, is ALLOWED and this action is REMANDED to the Commonwealth of Puerto Rico Court of First Instance, Superior

Court of San Juan pursuant to 28 U.S.C. § 1447(c).  No costs, expenses or attorneys' fees are assessed pursuant to 28 U.S.C. § 1447(c).  All other pending motions are DENIED as moot.

**SO ORDERED.**

*William G. Young*
WILLIAM G. YOUNG
DISTRICT JUDGE