UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

```
_____
                               )
MSO OF PUERTO RICO, LLC,        )
                               )
                Plaintiff,      )
                               )
        v.                      )        CIVIL ACTION
                               )        NO. 3:18-01683-WGY
MED SCAN, PSC,                  )
MEDISCAN, PSC,                  )
MEDSCAN MRI & CT SCAN, LLC and  )
WILLIAM CRUZ MEDINA,            )
                               )
                Defendants.     )
_____)
```

YOUNG, D.J.[1]                                      July 2, 2019

**MEMORANDUM & ORDER**

## I.    INTRODUCTION

This motion to remand turns on whether federal jurisdiction extends to a dispute that may require interpretation of federal regulations but which involves no federal actor, only a Medicare administrator.  For the reasons stated below, the Court ALLOWS the motion to remand and REMANDS the case to the Commonwealth of Puerto Rico Court of First Instance, Superior Court of San Juan.

---

[1] Of the District of Massachusetts, sitting by designation.

## II. BACKGROUND

### A.  Factual Background

The plaintiff, MSO of Puerto Rico, LLC ("MSO Puerto Rico"),
provides clinical management and administrative services to two
health insurance companies, MMM Healthcare, Inc. ("MMM
Healthcare") and PMC Medicare Choice, LLC ("PMC Medicare"), in
Puerto Rico and administers service provider contracts under
Medicare.[2]  See Compl. ¶ 4, ECF No. 11-1; Mot. Remand 1, ECF No.
8.  On October 7, 2013, Med Scan PSC ("Med Scan"), through Dr.
William Cruz Medina ("Dr. Cruz"), a radiologist who is a

---

[2] As the First Circuit describes in First Medical Health
Plan, Inc. v. Vega-Ramos: "Medicare is a federally run health
insurance program benefitting primarily those who are 65 years
of age and older. . . . In 1997, Congress enacted Medicare Part
C to allow Medicare beneficiaries to opt out of traditional fee-
for-service coverage under Parts A and B." 479 F.3d 46, 48 (1st
Cir. 2007) (citing 42 U.S.C. §§ 1395c et seq. (Part A), 1395j et
seq. (Part B), 1395w-21 et seq. (Part C)).  Although the parties
do not explicitly state, the claims in this case appear to arise
under a Part C, or Medicare Advantage, contractual relationship
between an administrator and a service provider.  Compl. ¶ 10;
Mot. Remand 7 ("[E]nrollees have already received the benefits
from Defendants and they are not in danger of being charged for
the services received.  The government is also not at a
financial risk of covering the claims."); see also Mot. Secure
J. ¶ 14, ECF No. 11-2 ("Both MED SCAN PSC and Dr. Cruz provided
services to Medicare beneficiaries for MMM and PMC plans
. . ."); Mot. Providing Sworn Statement ¶¶ 6-10, ECF No. 11-3
(describing Medicare Advantage services by Med Scan and Dr.
Cruz); Compl. Ex. 5, Letter from MMM Holdings, Inc. to Med Scan
1, ECF No. 1-1 (referencing inability to make "MA organization"
payments to provider post-revocation of Medicare privileges).

[2]

principal shareholder, director, and officer of Med Scan,[3]
executed a Provider Service Agreement ("Agreement") and Medicare
Advantage Addendum Agreement ("MA Addendum") with MSO Puerto
Rico.  Compl. ¶ 10.   The Agreement, among other things,
obligated Med Scan to notify MSO Puerto Rico within one business
day of the loss of its Medicare participation privileges and
authorized MSO Puerto Rico to terminate the Agreement if Med
Scan failed to comply with that obligation.  Id. ¶¶ 10-13.   The
MA Addendum required that Med Scan maintain full participation
status in Medicare and immediately notify MSO Puerto Rico if
Medicare ever excluded Med Scan from participating.  Id. ¶ 14.
The MA Addendum also required Med Scan to comply with all state
and federal Medicare regulations.  Id.

In April 2018, MSO Puerto Rico learned from the Office of
the Inspector General that the Center for Medicare and Medicaid
Services ("the Center") revoked Med Scan's Medicare privileges
on October 5, 2016, effective November 4, 2016.  Id. ¶¶ 15-16.
The Center barred Med Scan from Medicare because Med Scan
submitted claims for services that it performed on 12
beneficiaries, but those beneficiaries passed away prior to the

---

[3] Cruz is allegedly a member, principal shareholder,
director, and officer of Med Scan, Mediscan, PSC ("Mediscan"),
and Medscan MRI & CT Scan, LLC ("Medscan MRI").  Compl. ¶ 9.
Cruz allegedly transferred assets from Med Scan to Medi Scan and
Med Scan MRI.  Id. ¶¶ 58-59.

date of the procedure listed on the claims.  Id. ¶ 16 & Compl.
Ex. 2, Letter from the Center to Med Scan 1, ECF No. 1-1.
Moreover, Med Scan failed to produce those beneficiaries'
records to the Center upon request.  See id.  On April 13, 2017,
the Center revoked Dr. Cruz's privileges, effective May 13,
2017, for billing for services for seven beneficiaries after
those beneficiaries' deaths.  Id. ¶¶ 18-19.  Neither Med Scan
nor Dr. Cruz notified MSO Puerto Rico of the Center's revocation
of their Medicare privileges.  Id. ¶ 23.  On April 30, 2018, MSO
Puerto Rico terminated the Agreement and the MA Addendum and
notified Med Scan.  Id. ¶ 26.  MSO Puerto Rico demands the
return of $620,401.40 in payments, plus interest, that it made
to Med Scan after the Center revoked Med Scan and Dr. Cruz's
privileges.  Id. ¶ 37.

**B.   Procedural History**

On August 21, 2018, MSO Puerto Rico filed this action in
the Commonwealth of Puerto Rico Court of First Instance,
Superior Court of San Juan against Med Scan, Mediscan, Medscan
MRI and Cruz (collectively, "the Med Scan Defendants"), bringing
four "causes of action": (1) "[r]ecovery for Contractual
Breaches"; (2) "[r]ecovery under the Law, based on Federal Fund
Fraud"; (3) "[r]ecovery from Dr. Cruz as shareholder of MED SCAN
PSC"; and (4) "[r]ecovery by virtue of a Paulian Action for
Fraud of Creditors."  Compl. 7-11.  On September 16, 2018, the

[4]

Med Scan Defendants removed the action to the United States District Court for the District of Puerto Rico.  Notice Removal, ECF No. 1.  On October 30, 2018, MSO Puerto Rico moved to remand the action.  Mot. Remand 1.  On November 29, 2018, the Med Scan Defendants filed their opposition to the motion.  Opp'n Mot. Remand, ECF No. 19.

The Court heard oral argument on the motion to remand on February 14, 2019.  At the hearing, the Court ruled the Medicare regulations cited in the complaint do not create a private right of action but afforded the Med Scan Defendants an opportunity to provide authority for retaining jurisdiction in this Court.  On March 1, 2019, the Med Scan Defendants filed a supplemental brief.  Br. Supp. Exercising Federal Jurisdiction ("Suppl. Opp'n"), ECF No. 29.  On March 13, 2019, MSO Puerto Rico filed a supplemental brief in response.  Resp. Defs.' Suppl. Br. & Further Supp. Remand Mot. ("Suppl. Mem."), ECF No. 32.

## III. ANALYSIS

MSO Puerto Rico argues that this Court ought remand this action because: (1) the Medicare Act does not create a private right of action and (2) the action does not fall into the narrow exception permitting jurisdiction in cases presenting a substantial federal question.  Mot. Remand 3, 5.  The Med Scan Defendants oppose the motion on the grounds that the face of the complaint states a federal question where MSO Puerto Rico

[5]

alleges entitlement to relief based upon federal regulations, Opp'n Mot. Remand 8-13, and more robustly in supplemental briefing that there is a substantial federal question that justifies the exercise of jurisdiction. Suppl. Opp'n 5-9.

The Court remands the action because, in light of the removal standard, the Med Scan Defendants have failed to meet their burden of establishing either a federal question under the well-pleaded complaint rule on the face of the complaint or a substantial federal question.

**A.   Removal Jurisdiction Standard**

The Med Scan Defendants removed this action under 28 U.S.C. § 1441(a). Notice of Removal ¶ 7. "Section 1441 is 'strictly construed' against removal, and any doubt regarding the propriety of removal should be resolved in favor of remand." Scotiabank v. Halais-Borges, 339 F. Supp. 3d 25, 26 (D.P.R. 2018) (Besosa, J.) (citing Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 32 (2002); Rosselló-González v. Calderón-Serra, 398 F.3d 1, 11 (1st Cir. 2004)). The Med Scan Defendants, as "the part[ies] seeking removal . . . shoulder[] the burden of demonstrating that removal is appropriate." See id. (citing Fayard v. Northeast Vehicle Servs., LLC, 533 F.3d 42, 48 (1st Cir. 2008)).

[6]

## B.   The Court Lacks Federal Question Jurisdiction

The Med Scan Defendants removed this action based upon federal question jurisdiction.  Notice of Removal ¶ 15. Specifically, this Court has "original jurisdiction over 'federal question' cases -- that is, cases 'arising under the Constitution, laws, or treaties of the United States.'"  BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am., 132 F.3d 824, 831 (1st Cir. 1997) (quoting 28 U.S.C. § 1331).  "A case 'aris[es] under' federal law within the meaning of [section] 1331 . . . if 'a well-pleaded complaint' establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'"  Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 689-90 (2006) (quoting Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 27-28 (1983)).

### 1.   No Federal Question Is Presented under the Well-Pleaded Complaint Rule

The First Circuit has held that "[t]he gates of federal question jurisdiction are customarily patrolled by a steely-eyed sentry -- the 'well-pleaded complaint rule' -- which, in general, prohibits the exercise of federal question jurisdiction if no federal claim appears within the four corners of the complaint."  BIW Deceived, 132 F.3d at 831 (citing City of Chi.

[7]

v. International Coll. of Surgeons, 522 U.S. 156, 163 (1997);
Gully v. First Nat'l Bank, 299 U.S. 109, 113 (1936)).  The
Supreme Court has repeatedly held that "whether a federal
statute creates a claim for relief is not jurisdictional."
Northwest Airlines, Inc. v. County of Kent, 510 U.S. 355, 365
(1994) (collecting cases); Arroyo-Torres v. Ponce Fed. Bank,
F.B.S., 918 F.2d 276, 280 (1st Cir. 1990) (holding that federal
jurisdiction exists to determine whether an implied private
right of action created by statute).  To be sure,
"jurisdictional dismissals in actions premised on federal
question jurisdiction are the exception to the rule."  Arroyo-
Torres, 918 F.2d at 280.

It is also well-settled that "the absence of a valid (as
opposed to arguable) cause of action does not implicate subject-
matter jurisdiction, i.e., the courts' statutory or
constitutional power to adjudicate the case."  Steel Co. v.
Citizens for a Better Env't, 523 U.S. 83, 89 (1998).  That is,
"jurisdiction is not defeated by the possibility that the
averments might fail to state a cause of action on which the
petitioners could actually recover," id. (citing Bell v. Hood,
327 U.S. 678, 682 (1946)), but "[r]ather, the district court has
jurisdiction . . . unless the claim 'clearly appears to be
immaterial and made solely for the purpose of obtaining
jurisdiction or where such a claim is wholly insubstantial and

[8]

frivolous,'" id. (quoting Bell, 327 U.S. at 682-83).  Thus,
"[d]ismissal for lack of subject-matter jurisdiction because of
the inadequacy of the federal claim is proper only when the
claim is 'so insubstantial, implausible, foreclosed by prior
decisions of [the Supreme] Court, or otherwise completely devoid
of merit as not to involve a federal controversy.'"  Id.
(quoting Oneida Indian Nation of N.Y. v. County of Oneida, 414
U.S. 661, 666 (1974)).

     Here, MSO Puerto Rico does raise a count in the complaint
entitled "[r]ecovery under the Law, based on Federal Fund
Fraud."  Compl. 8.  MSO Puerto Rico asserts in the complaint
public policy concerns and provider obligations for improper
payments under Medicare.  Id. ¶¶ 24-29, 44-46.  This count more
specifically seeks recovery premised under Medicare's
administrative remedy regulations of recoupment or offset.  Id.
¶¶ 45-49; see 42 C.F.R. § 405.371-73.  Nonetheless, reading the
complaint as a whole, MSO Puerto Rico has described rights
plainly enforceable only as an administrative remedy.  Compl.
¶¶ 44-49.  MSO Puerto Rico argues that its complaint does not
reference a specific federal statute (i.e., this is not a claim
for benefits under Medicare under 42 U.S.C. § 405(g)), Mot.
Remand 4 (citing Heckler v. Ringer, 466 U.S. 602, 614-15
(1984)), and federal regulations absent statutory authorization
cannot give rise to a private right of action, id. at 4-5

[9]

(citing Alexander v. Sandoval, 532 U.S. 275, 291 (2001)).  The Med Scan Defendants counter that the complaint invokes a federal claim because it repeatedly references federal regulations and federal statutory mandate.  Opp'n Mot. Remand 11-15.

Here, the parties point to no statutory authority authorizing a private right of action under the recoupment regulations referenced in the complaint.  As the Supreme Court has held, "it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress.  Agencies may play the sorcerer's apprentice but not the sorcerer himself."  Id.  But notwithstanding this impediment, a plain reading of the regulations themselves reveal nothing more than a pure administrative remedy that cannot be read to include any right of action at all.  The First Circuit's examination of the recoupment regulations in United States v. Lahey Clinic Hosp., Inc., 399 F.3d 1, 17 (1st Cir. 2005), is instructive.  In Lahey, the First Circuit held that Medicare regulations concerning recoupment and offset procedures were administrative remedies that do not provide a basis for relief in a suit for damages by the government in federal court:

Each of these [regulatory] remedies of recoupment, offset, and suspension assume an ongoing relationship between the Secretary and the provider.  In situations in which there is no ongoing Medicare relationship between the Secretary and the provider, such as where the provider has ceased to treat Medicare beneficiaries or has gone out of business, neither recoupment nor offset would provide the United States with an opportunity to recover the overpaid Medicare payments. In addition, in situations in which the government seeks damages in the form of a complete payment from the provider for the Medicare overpayments, the recoupment, suspension, and offset procedures do not provide for this relief.

399 F.3d at 17.[4]  The First Circuit in <u>Lahey</u> thus reasoned that the Medicare Act's administrative remedies did not displace the federal government's authority to seek reimbursement in federal court under common law theories.  <u>Id.</u> at 17-18.  Since the Medicare Act does not displace the federal government's common law actions, following the First Circuit's reasoning, it would appear that it does not displace a private litigant's either. <u>See</u> <u>id.</u> at 17; Compl. ¶¶ 45-49.  Applied here, the regulation is a pure administrative remedy that cannot be read to assert a

---

[4] A plain reading of the definitions, described by the First Circuit as "terms of art," reveals these regulations merely describe administrative remedies.  <u>Lahey</u>, 399 F.3d at 17. "Recoupment" is "[t]he recovery by Medicare of any outstanding Medicare debt <u>by reducing present or future Medicare payments</u> and applying the amount withheld to the indebtedness."  <u>Id.</u> (quoting 42 C.F.R. § 405.370) (alteration in original, emphasis added).  "Offset" is the "[t]he recovery by Medicare of a non-Medicare debt <u>by reducing present or future Medicare payments</u> and applying the amount withheld to the indebtedness."  <u>Id.</u> (alteration in original, emphasis added).

[11]

private right of action, notwithstanding the absence of any statutory authorization for a private right of action.

The Med Scan Defendants press that even though the claim may be "meritless," there is nonetheless a federal claim raised on the face of the complaint that provides the appropriate nexus for this Court to exercise jurisdiction.  Opp'n Mot. Remand 14-15.  While the Med Scan Defendants are correct that the Court ought not undertake a merits analysis of the complaint, the Court still must determine, as the First Circuit instructs, whether the complaint states a colorable claim:

> As a matter of common practice, a district court confronted with a question of subject matter jurisdiction reviews a plaintiff's complaint not to judge the merits, but to determine whether the court has the authority to proceed.  When conducting this inquiry, the court only asks whether the complaint, on its face, asserts a colorable federal claim.

BIW Deceived, 132 F.3d at 832 (emphasis added).  Recently, the First Circuit has expounded on BIW Deceived:

> A court surveying its subject-matter jurisdiction reviews a plaintiff's complaint not to judge the merits, but to determine whether [it] has the authority to proceed.  The federal claim need not have merit in order for the court to assume jurisdiction.  To the contrary, a court has jurisdiction to decide a case so long as the plaintiff has alleged a colorable federal claim.  A claim is "colorable" if it is seemingly valid or genuine as opposed to wholly insubstantial, immaterial, or frivolous.

Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 18 (1st Cir. 2018) (internal citations and quotation omitted)

[12]

(alteration in original, emphasis added).  The Supreme Court has equated the phrase "wholly insubstantial and frivolous" with the phrase "not colorable" in the context of federal question jurisdiction.  Arbaugh v. Y&H Corp., 546 U.S. 500, 513 n.10 (2006) ("A claim invoking federal-question jurisdiction under 28 U.S.C. § 1331, Bell held, may be dismissed for want of subject-matter jurisdiction if it is not colorable, i.e., if it is immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous." (citations and quotations omitted)).

The district court's reasoning in Coker v. Kindred Healthcare Operating, Inc., Civ. A. No. 1:14-CV-03672-AT, 2015 WL 11439176, (N.D. Ga. Feb. 27, 2015), persuades the Court that MSO Puerto Rico's complaint does not establish that federal law creates the cause of action at issue here.  In Coker, the district court dismissed a non-colorable federal claim, premised upon Medicare regulations relating to nursing home standards, and remanded the action to state court.  Id. at *7.  The plaintiffs erroneously asserted a count for "[r]ecovery under Federal Law for Long Term Care Facility Abuse," and unlike in this case, expressly alleged in the complaint "an independent right to a cause of action under Federal Law."  Id. at *1.

The plaintiffs moved to remand, reversing course on their own complaint claiming, similar to MSO Puerto Rico here, that

[13]

the court lacked subject matter jurisdiction because, among

other things, no private right of action existed under the cited

Medicare regulations.  Id. at *2.  The defendants opposed the

motion remand arguing, similar to the Med Scan Defendants here,

that the plaintiffs' "allegations alone control, and that

[their] failure to set forth a viable legal claim goes to the

merits rather than to whether jurisdiction is properly

established."  Id.  The Coker court eloquently dispensed with

this argument:

> Defendants do not dispute that the Medicare Act
> does not provide Plaintiffs with a private right of
> action, nor do they assert any other basis under federal
> law as possible grounds for federal jurisdiction over
> Plaintiffs' claim in Count IX.  Instead, Defendants
> assert that Plaintiffs, as the masters of their
> complaint, should be held to their own allegations
> asserting a federal claim.  According to Defendants,
> Plaintiffs' "well-pleaded" Complaint establishes
> federal question jurisdiction despite the fact that the
> claim in Count IX may be frivolous and subject to
> dismissal.
> Defendants' elevation of form over substance misses
> the point. . . . Parties cannot confer jurisdiction on
> a federal court by simply alleging in a complaint a claim
> that has no basis in federal law.
> Defendants also mistakenly contend that whether
> Plaintiffs' alleged federal claim is frivolous has no
> bearing on the propriety of Defendants' removal.
> A federal court may dismiss for lack of subject
> matter jurisdiction an alleged claim under the
> Constitution or federal statutes that (1) clearly
> appears to be immaterial and made solely for the purpose
> of obtaining jurisdiction or (2) is wholly insubstantial
> and frivolous.  The test of federal jurisdiction is not
> whether the cause of action is one on which the claimant
> can recover.  Rather the test is whether the cause of
> action alleged is so patently without merit as to justify
> the court's dismissal for want of jurisdiction.  A claim

[14]

is wholly insubstantial and frivolous, for example, if
a plaintiff cannot plausibly argue that a federal
statute creates his right to relief.  Because, as stated
above, the Medicare regulations do not grant Plaintiffs
a federal right of action, Plaintiffs have not properly
plead a federal claim in Count IX and Count IX should be
dismissed unless Plaintiffs' tort claims involve
substantial questions of federal law implicating this
Court's subject matter jurisdiction under Merrell Dow
Pharm. Inc. v. Thompson, 478 U.S. 804 (1986) and Grable
& Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545
U.S. 308 (2005).

Id. at *4-5 (internal citations and quotations omitted).

Coker's reasoning resonates and persuades here: the parties
cannot plausibly argue that the regulations create a right to
relief under federal law.   Id. at *5.   Accordingly, a claim
purportedly premised on the Medicare Act's regulations for
administrative recoupment and offset provisions is a wholly
insubstantial and frivolous claim -- a non-colorable claim -- in
the sense that it is not an arguable cause of action in the
absence of statutory authorization of a private right of action,
a plain reading of the regulations, and First Circuit precedent.
See Lahey, 399 F.3d at 1.   It, therefore, does not pass muster
under the well-pleaded complaint rule.

### 2.   No Substantial Federal Question

MSO Puerto Rico next argues that its claims do not raise a
substantial federal question.   Mot. Remand 5.   MSO argues that
its claims do not arise under Medicare because they are not
"inextricably intertwined" with a claim for Medicare benefits

[15]

under Heckler, 466 U.S. at 615, 623, and the need to interpret federal regulations does not necessarily establish a substantial federal question. Mot. Remand 6 (citing Templeton Bd. of Sewer Comm'rs. v. American Tissue Mills of Mass., Inc., 352 F.3d 33, 40 (1st Cir. 2003); Administracion de Seguros de Salud de P.R. v. Triple-S Salud, Inc., 212 F. Supp. 3d 283, 286 (D.P.R. 2015)). MSO also relies on RenCare, Ltd. v. Humana Health Plan of Texas, Inc., 395 F.3d 555, 558 (5th Cir. 2004), and Main & Associates, Inc. v. Blue Cross & Blue Shield of Alabama, 776 F. Supp. 2d 1270, 1280 (M.D. Ala. 2011) for the proposition that contractual disputes between a provider and a managed care organization are, generally, not "inextricably intertwined" with claims for Medicare benefits. Mot. Remand 6-7. In particular, MSO argues that as in RenCare, here neither the beneficiaries nor the government are at financial risk for covering claims. Mot. Remand 7. The Med Scan Defendants initially opposed the motion on this ground claiming that a federal question is presented in the complaint that raised "direct, substantial, and disputed federal questions." Opp'n Mot. Remand 14-15. The Med Scan Defendants also distinguish RenCare by pointing out that the case was brought solely under state law, and that MSO makes public policy and financial risk allegations. Id. at 15.

After the hearing on the motion to remand, the Med Scan Defendants addressed more robustly the substance of MSO's

[16]

argument that in the absence of a federal claim under the well-pleaded complaint rule there is also no substantial question embedded in the state law claims.  Suppl. Opp'n 4. Nevertheless, as set forth below, the Court rules there is no substantial federal question.

The Med Scan Defendants press "[a] narrow exception to [the well-pleaded complaint] rule" lurking "in the 'remarkably tangled corner of the law' that deals with federal questions embedded in state law claims." Mennonite Gen. Hosp., Inc. v. Molina Healthcare of P.R., 319 F. Supp. 3d 587, 592 (D.P.R. 2018) (Gelpí, C.J.) (citing Almond v. Capital Props., Inc., 212 F.3d 20, 22 (1st Cir. 2000)).  In the context of this action, the exception is applicable "only in the rare instance where the contract is governed by state law but a 'federal issue is decisive' to the dispute and 'the federal ingredient . . . is sufficiently substantial to confer the arising under jurisdiction.'" One & Ken Valley Hous. Grp. v. Maine State Hous. Auth., 716 F.3d 218, 224 (1st Cir. 2013) (quoting W. 14th St. Commercial Corp. v. 5 W. 14th Owners Corp., 815 F.2d 188, 196 (2d Cir. 1987)).  This "doctrine applies in a 'special and small category of cases' where a 'state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and

[17]

state judicial responsibilities.'"   Id. (alteration in original,
emphasis added) (quoting Gunn v. Minton, 568 U.S. 251, 258-59
(2013)).   The First Circuit has explained that while "the scope
of federal ingredient jurisdiction is determined by the totality
of the circumstances, not by a single-factor test," and is
"necessarily fact-bound," exercise of "federal ingredient
jurisdiction should be applied with caution."   Id. at 224-25.
The Court, therefore, "must engage in a 'contextual inquiry'
that asks whether 'the federal issue is: (1) necessarily raised,
(2) actually disputed, (3) substantial, and (4) capable of
resolution in federal court without disrupting the federal-state
balance approved by Congress.'"   Mennonite Gen. Hosp., Inc., 319
F. Supp. 3d at 592 (quoting Gunn, 568 U.S. at 258).   "If all
four questions are answered in the affirmative, federal
jurisdiction exists . . . ."   Id.

     Here, the Court need only focus on the substantiality
factor.   The Supreme Court has explained that "it is not enough
that the federal issue be significant to the particular parties
in the immediate suit; that will always be true," even presuming
that the state claim necessarily raises a federal issue.   Gunn,
568 U.S. at 260.   Rather, under the Supreme Court's
substantiality analysis in Grable & Sons Metal Products, Inc. v.
Darue Engineering & Manufacturing, "[t]he substantiality inquiry
. . . looks instead to the importance of the issue to the

[18]

federal system as a whole." Gunn, 568 U.S. at 260 (citing

Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S.

308, 315 (2005)).  Typically, that means the cause of action

will turn on a new interpretation of a regulation, or the issue

is of broader significance for the federal government.  See id.

at 260-62; Municipality of Mayaguez v. Corporacion Para el

Desarrollo del Oeste, Inc., 726 F.3d 8, 14 (1st Cir. 2013).

The Court starts by "considering whether the issue in this

case is so substantial as to 'justify resort to the experience,

solicitude, and hope of uniformity that a federal forum offers

on federal issues.'"  Municipality of Mayaguez, 726 F.3d at 13

(quoting Grable, 545 U.S. at 312).  The First Circuit, relying

on Gunn and Grable outlined the "substantiality" analysis as

follows:

> But what makes an issue important to the federal
> system as a whole?  Recent Supreme Court case law has
> suggested at least two answers to this question.  First,
> an issue may be substantial where the outcome of the
> claim could turn on a new interpretation of a federal
> statute or regulation which will govern a large number
> of cases. . . .
> Second, a federal issue may also be substantial
> where the resolution of the issue has broader
> significance . . . for the Federal Government.  That is,
> because [t]he Government has a direct interest in the
> availability of a federal forum to vindicate its own
> administrative action, the Court has repeatedly
> suggested that a federal issue is more likely to be
> substantial where a claim between two private parties,
> though based in state law, directly challenges the
> propriety of an action taken by a federal department,
> agency, or service.

_Id._ at 14 (internal citations and quotations omitted).

MSO Puerto Rico argues that, under _Municipality of_
_Mayaguez_, the issues in this case are narrow and fact bound
inasmuch as "the Court must resolve whether Med Scan breached
the Agreement and continued billing services and receiving
payments, as alleged in the Complaint." Mot. Remand 8. The Med
Scan Defendants throughout their supplemental briefing claim
that MSO Puerto Rico will have to demonstrate under the non-
colorable "federal" count whether all of the payments were
properly made. Suppl. Opp'n 8-10. As an example, the Med Scan
Defendants cling to a narrow "illustrative" issue that _some_ of
the payments made _may_ have been made anyway because:

> under the Medicare program current during the
> relevant timeframe, not all payments to a provider with
> revoked privileges were made in error as it allowed these
> payments in cases of emergency and urgently needed
> services, as these are defined by the Medicare program.
> Therefore, [MSO Puerto Rico] must prove, as an issue of
> fact and law, whether the payments for which it seeks
> reimbursement "by statutory mandate" were made in error.

Suppl. Opp'n 5; _id._ at 9-10 ("[T]he resolution of the
aforementioned [issue] could impact a universe of payments made
to providers for emergency and urgently needed services which
may have been properly made and not subject to reimbursement
actions."); _id._ at 11 ("Whether and what type of emergency and
urgently services paid to a provider with revoked privileges may

[20]

be subject to reimbursement is a matter that requires national uniformity.").

The Med Scan Defendants primarily rely on New York City Health & Hosps. Corp. v. WellCare of N.Y., Inc., 769 F. Supp. 2d 250, 259 (S.D.N.Y. 2011), where the Southern District of New York denied a motion to remand an action relating to Medicare benefits. Suppl. Mem. 6-11. In WellCare, a City of New York Hospital ("the Hospital") was a non-contracting provider of services that billed WellCare for services on a standard form. Id. at 253. That form provided a field for a diagnosis related payment amount, which is the amount that the hospital would receive under Medicare. Id. The form also listed posted charges, which were often lower than the diagnosis related amount. Id. WellCare often paid the lower amount. Id. The Hospital sued WellCare for the diagnosis related amount. Id. The WellCare court held that the dispute was substantial because resolution of whether a Medicare Advantage Organization was required to pay the diagnosis related rate to a non-contracting provider "could potentially affect the hundreds of MA Organizations that have contracted with [the Center]." Id. at 257.

Here, as MSO Puerto Rico highlights in its supplemental opposition, the parties in this action, unlike in WellCare, have a contract, a fact that the WellCare court ruled was a material

distinction.  Id. at 257-58 (distinguishing RenCare because
"contracts between MA Organizations and Contracted Providers are
subject to very few restrictions, and . . . contracting parties
can generally negotiate their own terms, [whereas] the parties
here had no contractual relationship and reimbursement is
governed by a complex federal regulatory scheme").  As MSO
Puerto Rico argues, the Med Scan Defendants overlook this
critical distinction, and instead focus on MSO Puerto Rico's
non-colorable federal claim to support an argument that a
substantial federal claim confers jurisdiction.  Suppl. Opp'n 4-
5, 8-9 (citing Compl. ¶¶ 44-49).  MSO Puerto Rico counters that
Med Scan Defendants' premise ignores the fact that predominant
colorable claims require no interpretation of federal law, and
even if they did, the mere fact that the Puerto Rican courts
might have to interpret federal regulations does not mean the
questions of federal law are "substantial."  Suppl. Mem. 3-4.

Finally, the MedScan Defendants rely on Grupo Novel, Inc.
v. Oriental Financing Group, Inc., Civ. A. No. 11-1801-JAG
(D.P.R.) (García-Gregory, J.).  In that action, the court
retained jurisdiction in a case mooting a motion to dismiss and
did not issue an opinion concerning the jurisdictional issue.
Because the complaint in that action is restricted, the Court
does not discuss the facts here, but notes that the issues in

that case are quite distinguishable from the facts presented
here on the issue of substantiality.

MSO Puerto Rico has the better of it.  The Med Scan
Defendants have not met their burden to demonstrate that the
federal question is substantial.  First, other than the Med Scan
Defendants' bare arguments, Suppl. Opp'n 9-10, there is nothing
before the Court to suggest that the resolution of this dispute
will have a broad impact on any other cases.  Second, the
resolution of this action does not challenge the propriety of
any action taken by the government.  Third, neither the
government nor any Medicare beneficiaries are parties to this
action.  Fourth, the Court has nothing before it to suggest that
there is any potential direct governmental or beneficiary
liability under Medicare.  Finally, absent the non-colorable
federal claim, this action is a garden-variety state-law breach
of contract and tort claim between private parties.  Compl.
¶¶ 39-43.  Even if, as Med Scan Defendants contend, the Puerto
Rican courts might have to decide whether amounts were paid in
violation of Medicare regulations prohibiting payment after
revocation of Medicare privileges, or that some (notably
unquantified) amounts might have been paid in any event outside
of the contract, such questions do not implicate a <u>substantial</u>
federal issue.  <u>See, e.g.</u>, <u>Municipality of Mayaguez</u>, 726 F.3d at
14 ("Though the ultimate question in [plaintiff's] contract

[23]

claim is whether [defendant] failed to comply with federal
regulations, and thereby breached its contract, this dispute is
the sort of 'fact-bound and situation-specific' claim whose
resolution is unlikely to have any impact on the development of
federal law."); Administracion De Seguros De Salud De P.R., 212
F. Supp. 3d at 286-88 (similar).   This is the key distinction:
the colorable "claims do not provide a sufficient basis for the
exercise of federal jurisdiction because although they [might]
raise a disputed federal issue, they do not raise a 'substantial
issue of federal law' as is required."   Main & Assocs., 776 F.
Supp. 2d at 1281.   Inartful as MSO Puerto Rico's complaint may
have been in referencing a non-colorable claim for recovery
under Medicare regulations, MSO Puerto Rico's colorable claims
derive under the Agreement and MA Addendum, not directly under
Medicare or its regulations.   Compl. 7-11.   Strictly construing
the removal statute, and resolving all doubt in favor of remand,
this Court rules that action ought be remanded pursuant to 28
U.S.C. § 1447(c) because there is neither a colorable federal
question under the well-pleaded complaint rule nor a substantial
federal issue.

**IV. CONCLUSION**

For the aforementioned reasons, the motion to remand this
action, ECF No. 8, is ALLOWED and this action is REMANDED to the
Commonwealth of Puerto Rico Court of First Instance, Superior

Court of San Juan pursuant to 28 U.S.C. § 1447(c).  No costs,

expenses or attorneys' fees are assessed pursuant to 28 U.S.C. §

1447(c).  All other pending motions are DENIED as moot.

  **SO ORDERED.**

                                    _William G. Young_
                                    WILLIAM G. YOUNG
                                    DISTRICT JUDGE